UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
FIREMAN'S FUND INSURANCE CO.,
as subrogee of Sarug Inc., OFNA Corp.,

                Plaintiff,                              NOT FOR PUBLICATION
    -against-                                   **MEMORANDUM & ORDER**
                                                          10-CV-597 (CBA) (JMA)

JOSEPH WILNER et al.,

                Defendants.
------------------------------------------------------------------x
AMON, Chief United States District Judge:

      The plaintiff—an insurance company suing as subrogee of an insured commercial tenant—seeks damages suffered as the result of a fire at a commercial building in Ridgewood, Queens. Certain defendants, the owners and management company of the building, have moved for summary judgment. For the following reasons, the motion for summary judgment is denied.

## BACKGROUND

**I.    The Parties**

      The defendants remaining in this case are Joseph Wilner, Rywa Wilner, H. Wilner Realty Management, LLC ("H. Wilner Realty") (collectively, the "Wilner defendants"), and Miceli Kleinhans Roofing Co. ("MK Roofing").

      The Wilner defendants—who now move for summary judgment—do or did own and manage the commercial property at issue in this case, located 16-16 Summerfield Street in Ridgewood, Queens ("the Summerfield property"). Joseph Wilner, now deceased, originally owned the property. When he died, it passed to his wife, Rywa. (Phelan Dec. Ex. 2 at 10.) At the time of the fire, Rywa was leasing the property to Sarug, the commercial tenant who in turn

1

purchased insurance from the plaintiff in this case, Fireman's Fund Insurance Co. (Def. R. 56.1 ¶ 4.)

At the time of the fire, H. Wilner Realty was the management company responsible for the Summerfield property. (Id. ¶ 1.) Harry Wilner, Rywa Wilner's son, was the sole member of H. Wilner Realty; he died in November 2009. H. Wilner Realty also employed Sol Michael Wilner, Harry's brother, who is not a party to this case. (Id. ¶ 5.) After Harry died, Michael started his own company and continued to manage certain properties for Rywa. (Phelan Dec. Ex. 1 at 12–14.)

Before Harry died, H. Wilner Realty employed defendant MK Roofing to perform work on properties that it managed, including the Summerfield property. (Def. R. 56.1 ¶ 7.) MK Roofing hired Patrick Kelly, who worked for many years on buildings managed by H. Wilner Realty. At some point in time before March 16, 2009, Patrick Kelly purchased MK Roofing. (Id. ¶ 13.)

## II.  Factual Background

The parties do not dispute that on March 16, 2009, Kelly—on behalf of MK Roofing—performed roofing repairs on the Summerfield property at the request of Harry Wilner. (Id. ¶ 14.) In violation of New York Penal Law, Kelly used a blowtorch to install rubber roofing material on the wooden frame of the Summerfield property's roof. (Id. ¶ 15.) While using the blowtorch to perform repairs, Kelly set fire to the roof of the Summerfield property. (Id.) The subsequent fire caused substantial damage to the property and to Sarug, the tenant. (Id. ¶ 16.)

On the day of the fire, Kelly spoke on site with a fire investigator. Kelly told the investigator that the fire was his fault. (Gordon Dec. Ex. I at 62.) Kelly was subsequently

arrested and issued a desk appearance ticket. (Id. at 65.) According to his deposition testimony in this case, he later paid a fine of approximately two hundred dollars. (Id. at 66.)

### III. Procedural History

In February 2010, Fireman's Fund filed this action, invoking the district court's diversity jurisdiction under 28 U.S.C. § 1332, to recover money it paid Sarug, its insured, for damages sustained as result of the fire at the Summerfield property. The complaint asserts four claims: (1) negligence against the Wilner defendants, alleging that they failed to prevent the fire and consequent damage in various ways; (2) breach of contract/warranty against the property owners, Joseph and Rywa Wilner, alleging that they breached an obligation to ensure that the Summerfield property would be protected from fire damage; (3) negligence against MK Roofing, alleging that the company negligently performed the roof repair work that resulted in the fire; and (4) negligence against Clearview Roofing, which has since been dismissed from this action.

MK Roofing answered the complaint on April 22, 2010, and asserted a cross claim for negligence against the Wilner defendants. The Wilner defendants now move for summary judgment on (1) the plaintiff's negligence and breach of contract/warranty claims; and (2) MK Roofing's cross-claim for negligence.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate where the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material when it "might affect the outcome of the suit under the governing

3

law."  Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005) (internal quotation marks omitted).

The movant bears the burden of establishing that no genuine issue of material fact exists.  Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  The court "must resolve all ambiguities and draw all reasonable inferences against the movant."  Pucino v. Verizon Wireless Commc'ns, Inc., 618 F.3d 112, 117 (2d Cir. 2010).  However, "[t]o survive summary judgment the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  Niagara Mohawk Power Corp. v. Jones Chem. Inc., 315 F.3d 171, 175 (2d Cir. 2003) (internal quotation marks and emphasis omitted).

## II.   The Parties' Arguments

The Wilner defendants move for summary judgment on one ground only:  that Kelly's criminal use of the blowtorch on the Summerfield property was an intervening act that relieves them of any liability for the damage caused.  (Def. Mem. at 4–6.)

The plaintiffs and MK Roofing respond that Kelly's use of the blowtorch was not independent of the Wilner defendants' conduct, nor was it unforeseeable, because the evidence shows that Harry Wilner (as agent for Rywa Wilner and H. Wilner Realty) directed Kelly to use the blowtorch on the Summerfield property.  Kelly testified during his December 2, 2010 deposition, apparently for the first time, that he used the blowtorch on the Summerfield roof at Harry's direction.  Kelly testified that Harry "only wanted torch roofing" on the H. Wilner Realty properties.  (Gordon Dec. Ex. I at 31.)  Kelly testified that he tried to convince Harry to use another system but "he insisted on having torch."  (Id. at 32.)  Kelly said he "explained to Harry that it was illegal to do it on the premises of his property" but that Harry "insisted he

4

wanted it." (Id. at 34.) Kelly testified that he explained to Harry that the Summerfield property had a wood frame roof, but that Harry insisted he proceed with the blowtorch. (Id. at 35.)

Michael Wilner, on the other hand, testified at his deposition that Harry, who is now deceased, was not in the business of instructing roofers—or any other subcontractors who are professionals in their particular field—about the manner in which they should perform their work. (Phelan Dec. Ex. 1 at 37–38.) Michael conceded that he was never personally involved in the hiring or instruction of repairmen, and that he had no knowledge of the content of any conversations between Harry and Kelly, but he insisted that his brother was not the sort of man to insist on a certain type of roofing application. (Id. at 38–39, 44–46.)

The Wilner defendants do not dispute that if the Court finds admissible Kelly's testimony that Harry directed him to use the blowtorch, their motion for summary judgment must fail. They contend, however, that Kelly's testimony is not admissible against them for two reasons: (1) because it contains hearsay; and (2) because it is barred by New York's Dead Man's Statute, N.Y. C.P.L.R. § 4519. They argue that without Kelly's testimony they are entitled to summary judgment as a matter of law because the superseding event, not any conduct by the Wilner defendants, was the proximate cause of the plaintiff's loss.

The plaintiff and MK Roofing, on the other hand, argue that neither the hearsay rules nor § 4519 prevents consideration of Kelly's testimony. The plaintiff and MK Roofing have not offered any theory on which they could prevail if the Court does not consider Kelly's testimony, and thus this motion for summary judgment turns entirely on whether the Court can consider Kelly's deposition testimony.

5

### III. Hearsay

The Wilner defendants argue that Kelly's testimony about his conversation with Harry contains hearsay and is therefore not admissible under Federal Rule of Evidence 802.

As an initial matter, the Court observes that there are two aspects of Kelly's testimony that are relevant to the Wilner defendants' argument that Kelly's criminal use of a blowtorch constituted a "superseding event" that they could not have foreseen. First, there is Kelly's testimony about <u>what he said</u> to Harry during their conversation about the work to be performed on the Summerfield property. That testimony would show that Harry was on notice of the fact that Kelly would be using a blowtorch on a wooden roof, which would refute the Wilner defendants' argument that they could not have foreseen Kelly's illegal, fire-causing conduct. The second aspect of Kelly's testimony, which is the aspect on which the parties have focused, are the statements that Harry expressly directed Kelly to use a blowtorch on the Summerfield property. That testimony refutes both the argument that Kelly's conduct was unforeseeable and also the argument that his conduct was independent of that of the Wilner defendants.

The Wilner defendants' hearsay argument is rejected as to Kelly's testimony that he informed Harry he would be using a blowtorch on the wooden roof. That testimony is not hearsay because it is not offered for the truth of any of Kelly's prior statements. That testimony is offered only for the effect that those prior statements had on Harry—that they gave him knowledge of the fact that Kelly would use a blowtorch on the roof of the Summerfield property. <u>United States v. Ferguson</u>, -- F.3d --, 2011 WL 6351862, at *17 (2d Cir. 2011) (holding that a statement is not hearsay when "it was offered solely for the purpose of showing that the statement was made"); <u>George v. Celotex Corp.</u>, 914 F.2d 26, 30 (2d Cir. 1990) ("To be sure, an

6

out of court statement offered not for the truth of the matter asserted, but only to show that the defendant was on notice of a danger, is not hearsay.").

The Wilner defendants' hearsay argument is also rejected as to Kelly's testimony about what Harry said to him. Hearsay is evidence of a declarant's out-of-court statement offered to prove the truth of what is asserted in the statement. See Fed.R.Evid. 801(a). Kelly's testimony that Harry insisted that he "use the blowtorch" is an imperative—a command that Kelly do something. The statement does not assert any fact, which means that it simply is not hearsay. United States v. Ned, 637 F.3d 562, 569 (5th Cir. 2011) (testimony that defendant "[told me to] go to the front door" is not an assertion of fact, but rather non-assertive oral conduct that is not hearsay); United States v. Waters, 627 F.3d 345, 358 (9th Cir. 2010) (defendant-declarant's admonition to a friend to "tell the truth" to investigators is not hearsay because it is "an imperative and not an assertion of fact"); United States v. Hayes, 369 F.3d 564, 568 (D.C. Cir. 2004) ("The imperative 'tell the truth' does not expressly assert anything.").

In sum, Harry's testimony that (a) he informed Harry that he would use a blowtorch; and (b) Harry instructed him to use a blowtorch does not contain hearsay and is admissible unless barred by some other legal rule.

## IV. New York's Dead Man's Statute

The Wilner defendants also assert that the Court is barred from considering Kelly's deposition testimony by New York's Dead Man's Statute, N.Y. C.P.L.R. § 4519.[1] The statute provides, in relevant part:

---

[1] This statute applies in federal court in diversity suits governed by New York law. Rosenfeld v. Basquiat, 78 F.3d 84, 88 (2d Cir. 1996), citing Fed.R.Evid. 601 ("in civil actions and proceedings, with respect to an element of a claim or defense to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law"); Brand v. Brand, 811 F.2d 74, 79 (2d Cir. 1987) ("Under Fed. R. Evid. 601, New York's Dead Man's Statute applied to this diversity action.").

> Upon the trial of an action . . . , a party or a person interested in the event . . . shall not be examined as a witness in his own behalf or interest . . . against the executor, administrator or survivor of a deceased person . . . or a person deriving his title or interest from, through or under a deceased person . . . , concerning a personal transaction or communication between the witness and the deceased person . . . , except where the executor, administrator, [or] survivor . . . is examined in his own behalf, or the testimony of the . . . deceased person is given in evidence, concerning the same transaction or communication.

N.Y. C.P.L.R. § 4519. "The party seeking the protection of The Dead Man's Statute bears the burden of demonstrating that the witness' testimony is subject to the statutory exclusion." Tenuto v. Lederle Labs., 896 N.Y.S.2d 618, 621 (N.Y. Sup. Ct. 2010) (citing Stay v. Horvath, 576 N.Y.S.2d 908 (N.Y. App. Div. 1991)).

The Dead Man's Statute "prevent[s] the living from testifying to certain 'personal transactions' with the dead." Matter of Wood, 52 N.Y.2d 139, 144 (N.Y. 1981). "One of the main purposes of the rule [i]s to protect the estate of the deceased from claims of the living who, through their own perjury, could make factual assertions which the decedent could not refute in court." In re Zalk, 10 N.Y.3d 669, 678 (N.Y. 2008) (quoting Matter of Wood, 52 N.Y. 2d at 143-44); see also Ward v. Kovacs, 390 N.Y.S.2d 931, 403 (N.Y. App. Div. 1977) (holding that application of the statute "must be grounded, ultimately, on the concept that where death has sealed the lips of one of the parties to a personal transaction, the law, for the protection of his estate and his survivors, should and ought to seal the lips of anyone else making a claim against the estate"). Under the statute, an interested witness cannot testify against a decedent's estate about a personal transaction with the decedent. Rosenfeld v. Basquiat, 78 F.3d 84, 88 (2d Cir. 1996).

No party suggests that Kelly, whose testimony is at issue, is not "a person interested in the event" of this litigation within the meaning of the Dead Man's Statute. Kelly is the principal

8

of MK Roofing, a defendant in this case, who has an interest in ensuring that liability is spread among the defendants. Nor is there any dispute that his testimony involves a personal transaction with the decedent, Harry. The question in this case is whether Joseph Wilner (the deceased's father), Rywa Wilner (the deceased's mother), and/or H. Wilner Realty (the company formerly owned by the deceased), against whom the testimony is offered, can invoke the protection of the Dead Man's Statute to bar the Court from considering Kelly's deposition testimony in resolving this motion for summary judgment.

Because the purpose of the Dead Man's Statute is to protect the estate of the decedent, whether it can be invoked to exclude otherwise admissible testimony depends on who the testimony is offered against. The plain language of the statute requires that the testimony be offered "against the executor, administrator or survivor of a deceased person . . . or a person deriving his title or interest from, through or under a deceased person." N.Y. C.P.L.R. § 4519. Relying on this language, the New York Court of Appeals held in its most recent discussion of the statute that it did not apply in an attorney disciplinary proceeding to preclude an attorney from testifying to a conversation he had with his deceased client about how to handle a large down payment in a real estate transaction. In re Zalk, 10 N.Y.3d at 678. The statute did not bar the attorney's testimony because he "did <u>not</u> testify 'against the executor, administrator or survivor' of [the decedent]," as required by the language of the statute, but "[r]ather, he testified against the Disciplinary Committee." Id. at 679.

Similarly, both district courts and New York state courts have found that the statute does not bar an interested witness from testifying to personal interactions with a decedent if a judgment against the person or company against whom the testimony is offered would not affect the estate or survivor of the decedent, or a person deriving his title in interest from the decedent.

9

See e.g., Courtland v. Walston & Co., 340 F. Supp. 1076, 1085-86 (S.D.N.Y. 1972) (holding that statute did not bar testimony offered against a corporation for whom the decedent was an agent because the testimony would not "affect any right or property derived 'from, through or under' the deceased agent, as the principal of the agent was neither a survivor nor a person deriving his title or interest from, through or under the decedent within the meaning of the statute."); Home Ins. Co. v. Aurigemma, 257 N.Y.S.2d 980, 987 (N.Y. Sup. Ct. 1965) (holding that statute did not bar defendant's testimony because "his testimony would not be against the interest of the representative or survivor of [the decedent] and therefore not within the purview of the statute"); Rodenhouse v. American Cas. Co. of Penn., 244 N.Y.S.2d 856, 857 (N.Y. App. Div. 1963) (holding that in suit against corporation, Dead Man's Statute did not bar plaintiff's testimony about communications with corporation's agent, deceased at time of litigation, because corporation who testimony was offered against "was neither survivor nor a person deriving his title or interest from a decedent").

Based on these cases, the Court finds that neither Joseph nor Rywa Wilner can invoke the Dead Man's Statute to exclude Kelly's testimony. Neither party is the executor or administrator of Harry's estate. Nor is there any evidence on the record to suggest that a judgment against either Joseph or Rywa Wilner could adversely affect Harry's estate, or any person or entity that derived an interest in this lawsuit from Harry. Joseph and Rywa Wilner argue that they are "survivors" of Harry because they are his parents. However, they are not being sued in this action in their capacity as Harry's next of kin. Rather, they are being sued in their individual capacity, as owners or previous owners of the Summerfield property. See Ehrlich v. Am. Moninger Greenhouse Mfg. Corp., 26 N.Y.2d 255, 256 (N.Y. 1970) (holding that plaintiff, wife of decedent, could not invoke Dead Man's Statute to exclude defendant's testimony because

"plaintiff has brought this action in her individual capacity, and not as a representative of an estate or a survivor of a decedent"); Levine v. Levine, 590 N.Y.S.2d 439, 445 (N.Y. App. Div. 1992) (holding that plaintiffs, wife and children of decedent, could not invoke statute to exclude defendant's testimony because although "such testimony would be against the interest of [the decedent's] children, it would not be against the interest of his estate"). Although Kelly's testimony might be against the interest of Harry's parents, it is not being offered against the interest of his estate.

It is less clear on this record whether a judgment against H. Wilner Realty—which was owned by Harry—would adversely affect Harry's estate or some interest of Harry's to which some individual or entity has succeeded. Harry was not a mere agent of the H. Wilner Realty, he was the sole member of the limited liability corporation. See Mark Patterson, Inc. v. Bowie, 661 N.Y.S 2d 709, 711-12 (N.Y. Sup. Ct. 1997) (holding that Dead Man's Statute applied to bar testimony offered against defendant corporation where decedent had ownership interest in corporation, thereby giving the executors of the decedent's estate a pecuniary interest in any judgment against the corporation).

Michael Wilner testified at his deposition that "H. Wilner Realty no longer exists." (Phelan Dec. Ex. 1 at 12.) He explained that everything at H. Wilner Realty was under Harry's name and that he "cannot find any paperwork." (Id. at 13.) At oral argument, counsel for the Wilner defendants represented that the Wilner defendants do not know the details of Harry's estate, who is the executor, or if anyone benefitted from the estate. If a judgment against H. Wilner Realty could adversely affect Harry's estate or some interest of Harry's to which some individual or entity has succeeded, then H. Wilner Realty could invoke the protections of § 4519. However, on this record, the Court finds that H. Wilner Realty has not met its burden of

11

demonstrating that a judgment against the dissolved company would have such an effect, and therefore it has not met its burden of demonstrating that it can invoke the statute to exclude Kelly's deposition testimony.[2]  The Court therefore can consider Kelly's deposition testimony in determining whether to grant summary judgment in favor of the Wilner defendants.

## CONCLUSION

Taking into account Kelly's deposition testimony, a genuine issue of material fact remains as to whether Kelly's use of the blowtorch on the Summerfield property constituted an intervening act that relieved the Wilner defendants of liability, or whether it foreseeable.  See Stagl v. Delta Airlines, Inc., 52 F.3d 463, 473 (2d Cir. 1995) ("The governing rule in New York has long been settled and is perfectly clear: an intervenor's actions will not break the necessary chain of causation where they are a normal or foreseeable consequence of the situation created by the defendant's negligence.") (quotation marks omitted).  Accordingly, the Wilner defendants' motion for summary judgment is denied.

SO ORDERED.

Dated: Brooklyn, New York
       February 27, 2012

                                                    /s/
                                             Carol Bagley Amon
                                             United States District Judge

---

[2]  Because the Court finds that on this record none of the Wilner defendants can invoke the Dead Man's Statute to exclude Kelly's testimony, the Court need not address the plaintiff's argument that the Dead Man's Statute, if applicable, cannot be invoked at the summary judgment stage.